IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

RALPH EDWARD CROMPTON,
      Petitioner,

v.                            Case No.  5:05cv10/SPM/MD

JAMES CROSBY, JR.,
      Respondent.

_____

## REPORT AND RECOMMENDATION

Before the court is a petition for writ of habeas corpus filed pursuant to 28 U.S.C. § 2254.  (Doc. 1).  Respondent has filed a motion to dismiss the petition as untimely, providing relevant portions of the state court record.  (Docs. 9, 10 & 22).  Petitioner has responded in opposition to the motion.  (Docs. 14 & 19).  The matter is referred to the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636 and N.D. Fla. Loc. R. 72.2(B).  After careful consideration, it is the opinion of the undersigned that the pleadings and attachments before the court show that the petition is untimely and should be dismissed.

## BACKGROUND AND PROCEDURAL HISTORY

On November 25, 1996 petitioner was convicted of first-degree murder in the Circuit Court of Bay County Florida, case number 96-521.  (Doc. 10, Ex. B).[1]  He was sentenced to life in prison without parole.  (*Id.*).  His conviction and sentence were affirmed by the Florida First District Court of Appeal ("First DCA") on July 9, 1998.  *Crompton v. State*, 715 So.2d 1003 (Fla. 1st Dist. Ct. App. 1998) (copy at Ex. A).

_____

[1]Hereafter all references to exhibits will be to those provided at Doc. 10 unless otherwise noted.

On August 6, 1998 petitioner filed a motion for jail credit pursuant to FLA.R.CRIM.P. 3.800,[2] which was denied. (Ex. C). The First DCA affirmed on March 5, 1999, *Crompton v. State*, 728 So.2d 1188 (Fla. 1st Dist. Ct. App. 1999) (copy at Ex. D), with the mandate issuing March 31, 1999. (*Id.*).

On June 1, 1999 petitioner filed a state petition for writ of habeas corpus in the First DCA. (Ex. E). The court issued a per curiam denial without written opinion on July 12, 1999. (Ex. F). Petitioner's motion for rehearing was denied on August 12, 1999. (*Id.*). On August 27, 1999 petitioner sought review of the denial of habeas relief by filing a Petition To Invoke All Writs Jurisdiction in the Florida Supreme Court. (Ex. G). The court dismissed the petition for lack of jurisdiction on October 28, 1999. (Ex. H). Petitioner's motion for rehearing was denied on February 7, 2000. (Ex. I). On March 17, 2000 petitioner filed a petition for writ of certiorari in the United States Supreme Court. (Ex. J). The petition was denied on June 12, 2000. (Ex. K).

On April 24, 2000 petitioner filed a motion to correct illegal sentence pursuant to FLA.R.CRIM.P. 3.800. (Ex. L). The trial court denied the motion on June 1, 2000. (Ex. M). Petitioner did not appeal the denial order.

On July 27, 2000 petitioner filed a motion for postconviction relief pursuant to FLA.R.CRIM.P. 3.850. (Ex. N). An evidentiary hearing was held on March 2, 2001, May 18, 2001 and August 17, 2001. (Doc. 22, ex. CC; Doc. 14, ex. 1). At the May 18, 2001 hearing, petitioner filed three motions for additional testing of physical evidence: (1) a motion to inspect and test (via wear pattern analyses) the "Nike" shoe found underneath the victim, (2) a motion to inspect and test certain blood evidence (the victim's blood found in petitioner's rental car) for the existence of cerebrospinal

---

[2]Throughout his motion to dismiss, the respondent indicates the date of filing of petitioner's various applications for postconviction or other relief as the date the pleading was docketed. However, Florida has adopted the "mailbox rule" as a matter of Florida law. *See Haag v. State*, 591 So.2d 614 (Fla. 1992). Under that rule, an incarcerated *pro se* defendant's pleading is deemed filed on the date it was delivered to prison officials for mailing rather than the date it was docketed or stamped "Filed." The burden of proof as to the date of mailing lies with prison authorities, "who have the ability to establish the correct date through their logs." *Garvey v. Vaughn*, 993 F.2d 776, 781 (11th Cir. 1993). In the instant case, respondent has not submitted evidence that the date of mailing was any date other than that reflected in the certificate of service or, in the absence of a certificate, the signature date. Thus, for purposes of this Report and Recommendation the court has deemed each pleading "filed" on the date reflected in the certificate of service. In the absence of a certificate, the pleading is deemed "filed" on the date petitioner executed the pleading.

fluid, (3) and a motion for postconviction mitochondrial DNA testing of hair recovered from a ski mask which was found underneath the victim. (Doc. 10, ex. Y). It was petitioner's contention that this testing would produce evidentiary support for the claims raised in his Rule 3.850 motion for postconviction relief. (*Id.*). The trial court denied  postconviction relief in an order dated August 23, 2001. (Doc. 22, ex. CC).  The First DCA affirmed the denial order without written opinion on July 28, 2003. *Crompton v. State*, 855 So.2d 59 (Fla. 1st Dist. Ct. App. 2003) (Table) (copy at Doc. 10, ex. O).  The mandate issued October 7, 2003.  (*Id.*).  On November 14, 2003 petitioner filed a petition for writ of certiorari in the United States Supreme Court. (Ex. W).  The petition was denied on March 8, 2004.  (Ex. X).  On November 26, 2001 petitioner filed a motion pursuant to FLA.R.CRIM.P. 3.853 seeking postconviction DNA testing of the hair found in the ski mask.  (Ex. Y, pp. 41-46).  The trial court denied the motion in an order issued May 20, 2002.  (*Id.*, p. 64).  Petitioner's motion for rehearing was denied on June 6, 2002.  (*Id.*, p. 73).  The First DCA affirmed without written opinion on August 29, 2002, *Crompton v. State*, 829 So.2d 206 (Fla. 1st Dist. Ct. App. 2002) (Table) (copy at Ex. Y, p. 87), with the mandate issuing October 25, 2002.  (Ex. Y, p. 86).  On September 23, 2003 petitioner filed in the trial court three Motions To Be Heard On Pending Amended Motions To Inspect And Test Physical Evidence.  (*Id.*, p. 113-18).  The trial court denied relief on January 21, 2004, finding that "[a]ll claims raised by Defendant regarding his Motion For Postconviction Relief were denied by this Court and affirmed on appeal."  (*Id.*, p. 122).  Petitioner's motion for rehearing was denied on February 3, 2004.  (*Id.*, p. 126).  Petitioner appealed, but the First DCA dismissed the appeal on August 10, 2004 for lack of jurisdiction (finding that the notice of appeal was untimely filed).  *Crompton v. State*, 881 So.2d 635 (Fla. 1st Dist. Ct. App. 2004) (copy at Ex. Z).  The mandate issued October 1, 2004. (Doc. 14, ex. 9; *see* www.1dca.org, Case Number 1D-04-1097).  On August 26, 2004 petitioner filed a petition for writ of mandamus in the First DCA seeking to compel the trial court to rule on his three motions to inspect and test physical evidence. (Doc. 14, p. 12 and ex. 2; *see* www.1dca.org, Case Number 1D-04-3901).  The petition was denied on October 19, 2004.  *Crompton v. State*, 888 So.2d 626 (Fla. 1st Dist. Ct.

App. 2004) (Table) (copy at Doc. 14, ex. 10).  Petitioner's motion for rehearing was denied on December 1, 2004.  (Doc. 14, ex. 12).

While petitioner's Rule 3.850 proceeding was pending, petitioner filed a number of other applications in the state courts seeking various forms of relief.  On September 1, 2000 petitioner filed another state petition for writ of habeas corpus in the First DCA.  (Ex. P).  The First DCA denied the petition on October 11, 2000. (Ex. Q).

On May 18, 2001 petitioner filed a second Rule 3.850 motion for postconviction relief in the trial court.  (Ex. R, pp. 1-7).  The trial court dismissed the motion without prejudice on June 28, 2002 for lack of jurisdiction.  (*Id.*, p. 35).  On appeal the First DCA affirmed, but not for the reason set forth by the trial court:

> Although the trial court was incorrect to dismiss the appellant's second postconviction motion on the basis that it lacked jurisdiction to entertain the claim therein, we affirm the trial court's order because the appellant's second motion was not filed within two years of the date that his judgment and sentence became final, and, despite the appellant's assertion to the contrary, the facts upon which the present motion is based do not meet the test for newly discovered evidence. *See Jones v. State*, 709 So.2d 512, 521 (Fla. 1988).

*Crompton v. State*, 842 So.2d 950 (Fla. 1st Dist. Ct. App. 2003) (copy at Ex. Y, pp. 110-11).  The mandate issued May 9, 2003.  (Ex. S; Ex. Y, p. 109).  Petitioner sought review in the Florida Supreme Court; however, on June 26, 2003 that court issued an order declining to accept jurisdiction.  *Crompton v. State*, 848 So.2d 1153 (Fla. 2003) (Table) (copy at Ex. T).

On December 31, 2002 petitioner filed a petition for writ of prohibition in the Florida Supreme Court.  (Ex. U).  The petition was denied on February 25, 2003. *Crompton v. State*, 839 So.2d 697 (Fla. 2003) (Table) (copy at Ex. V).

Petitioner filed the instant federal habeas petition on January 14, 2005.  (Doc. 1, p. 6; Doc. 14, p. 7 ¶ 12).

## DISCUSSION

Because petitioner filed this § 2254 petition after April 24, 1996, the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), the

AEDPA governs the present petition. *Lindh v. Murphy*, 521 U.S. 320, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997). Pursuant to 28 U.S.C. § 2244, a one-year period of limitation applies to the filing of a federal habeas corpus petition by a person in custody pursuant to a state court judgment. The limitation period runs from the latest of:

>    (A)  the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

>    (B)  the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

>    (c)  the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

>    (D)  the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

§ 2244(d)(1). According to the tolling provision of § 2244(d), the time during which a "properly filed" application for state postconviction or other collateral review is pending shall not be counted toward any period of limitation. 28 U.S.C. § 2244(d)(2).

   In the instant case, petitioner does not base his petition on any right newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review. Nor does petitioner assert that the facts supporting his claims could not have been discovered through the exercise of due diligence before the filing of this petition. Although he does not specifically argue that a State-created impediment prevented him from filing his petition, he does argue that commencement of the limitations period should be delayed due to the pendency of a lawsuit he filed in the United States District Court for the District of Columbia against the United States Air Force under the Freedom of Information Act, 5 U.S.C. § 552 ("FOIA"). According to petitioner, he filed the lawsuit on February 24, 1998 claiming that "the government was holding exculpatory material which deprived him of a fair trial" in that the United States Air Force Office of Special Investigation was withholding "records which involved the criminal investigation leading to

[petitioner's] State conviction." (Doc. 14, p. 8; Doc. 1, Mem. In Support of Timeliness of Filing Only," p. 1). Relying on *Edmond v. United States Attorney*, 959 F.Supp. 1 (D. D.C. 1997), petitioner contends that the § 2244 statute of limitations was tolled from the date his FOIA lawsuit was filed (February 24, 1998) until the date the information was released to him (November 1, 2000). (Doc. 14, pp. 8-9). Because petitioner's direct appeal was pending on February 24, 1998, the court liberally construes petitioner's argument as one that the statute of limitations did not begin to run until November 1, 2000. This argument should be rejected.

In *Edmond*, the plaintiff (a federal defendant) claimed that documents he requested through the FOIA "would aid him in overturning his criminal conviction, and therefore release him from his incarcerative status." 959 F.Supp. at 3. With respect to 28 U.S.C. § 2255(2), the district court stated that

> in accordance with the AEDPA, the one year period of limitation would not run until "the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed." 28 U.S.C. § 2255(2). Therefore, if Plaintiff is claiming that the government is holding exculpatory material, the one year limitation would not begin until the Plaintiff receives that evidence.

*Edmond*, 959 F.Supp. at 3-4 (footnote omitted).

For the reasons that follow, the undersigned finds that the *Edmond* decision does not control this case. First, to satisfy § 2244(d)(1)(B), petitioner must show (1) a State-created impediment, (2) that violates the Constitution or laws of the United States and (3) prevents the filing of the federal habeas petition. In this case, petitioner does not allege that it was State action that created the "impediment;" rather, he contends it was Federal actors who withheld information. *Cf. Duncan v. Walker*, 533 U.S. 167, 121 S.Ct. 2120, 150 L.Ed.2d 251 (2001) (interpreting tolling provision of § 2244(d)(2) which references "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending" as relating only to such applications filed in State court and not to those filed in Federal court).

Second, even assuming, without deciding, that the Federal action at issue constitutes "State action" within the meaning of § 2244(d)(1)(B), and further

assuming that the government withheld exculpatory material (a matter that petitioner has not demonstrated), such withholding did not prevent petitioner from filing a habeas petition under § 2254, and the time limit contained in § 2244(d)(1)(B) does not apply to this case.  Although neither § 2244 nor the Eleventh Circuit has defined what constitutes an "impediment" for purposes of § 2244(d)(1)(B), the plain language of the statue makes clear that whatever constitutes an impediment must <u>prevent</u> a prisoner from filing his federal habeas petition.  The pendency of a request under the FOIA does not of itself necessarily prevent anyone from filing a § 2254 petition.  Furthermore, petitioner has not demonstrated that he was unable to present any of the sixteen claims raised in the instant petition as a result of not having the documents provided in response to his FOIA request.  Indeed, petitioner's response to the motion to dismiss indicates that the documents at issue in the FOIA request were those that comprised the United States Air Force's ("USAF") investigative file. (Doc. 14, ex. 14).  The sixteen claims raised in the instant habeas petition relate to the following: (1) denial of due process at trial (improper prosecutorial argument), (2) denial of right to confront witnesses (trial court error in excluding testimony), (3) ineffective assistance of appellate counsel (failure to raise on appeal issue of trial court failing to properly instruct the jury of mandatory sequestration during deliberations), (4) ineffective assistance of appellate counsel (failure to raise on appeal issue concerning prosecutorial misconduct during trial), (5) denial of due process in state habeas proceeding (failure to require state to respond to petition), (6) denial of due process at trial (petitioner absent during critical stage of trial), (7) denial of due process in postconviction proceeding (failure to appoint counsel for Rule 3.850 evidentiary hearing), (8) denial of due process in postconviction proceeding (failure to rule on petitioner's three motions for postconviction testing), (9) ineffective assistance of trial counsel (failure to move to suppress petitioner's statements), (10) denial of due process at trial, ineffective assistance of trial counsel (prosecutorial misconduct in the form of sarcastic and prejudicial remarks, improper argument, showing particular items of evidence to the jury to inflame them;

counsel's failure to object to misconduct),[3] (11) denial of due process at trial (cumulative effect of prosecutorial misconduct), (12) denial of due process in state postconviction proceeding (denying Ground 1, Claims 4 and 6 of Rule 3.850 motion without holding an evidentiary hearing), (13) denial of due process in state postconviction proceeding (denying Ground 2, Claims 10 and 11 of Rule 3.850 motion without holding an evidentiary hearing), (14) ineffective assistance of trial counsel (failure to prepare for trial and failure to make various objections, (15) ineffective assistance of trial counsel (cumulative effect of 71 errors), and (16) denial of due process in postconviction proceeding (failure to allow postconviction DNA testing of four hairs).  (Doc. 1, pp. 5-5DD).

    None of the foregoing claims assert a *Brady*[4] violation.  Nor do petitioner's allegations suggest the withholding of exculpatory material purportedly contained in the USAF investigative file.  Moreover, with the exception of the claims alleging denial of due process in the state postconviction proceedings, all of the claims raised in the federal habeas petition are identical to claims presented either in petitioner's direct appeal brief, in his first state habeas petition, or in his first Rule 3.850 motion.  All of those pleadings were filed prior to the dates petitioner allegedly received the records from the United States Air Force (September 11, 2000, October 27, 2000 and November 1, 2000).  (*See* Doc. 14, p. 9).  Thus, although petitioner purportedly had not yet received the information from the USAF investigative file, he was able to present to the state courts the issues raised in his federal habeas petition. Petitioner has not demonstrated, nor can he demonstrate, that satisfaction of his FOIA request to the United States Air Force was required for the presentation of any of his federal habeas claims.  Without a showing that the alleged government-created impediment prevented petitioner from filing his § 2254 petition, the undersigned finds § 2244(d)(1)(B) inapplicable.

    Accordingly, the statute of limitations must be measured from the remaining trigger, which is the date on which petitioner's conviction became final.  *See* 28

---

[3]The acts of alleged prosecutorial misconduct are the same as those identified in Claim 4.

[4]*Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).

U.S.C. § 2244(d)(1).  The parties agree that petitioner's conviction became final for purposes of § 2244 and, correspondingly, that the one-year limitations period began to run, on November 22, 1998 which is 90 days after the First DCA issued its order denying rehearing.[5]  (Doc. 9, pp. 5-6; Doc. 14, p. 8).  *See Bond v. Moore*, 309 F.3d 770 (11th Cir. 2002) (for purposes of § 2244(d)(1)(A), the one-year limitations period began to run when the time expired for filing a petition for certiorari with the United States Supreme Court); *Jackson v. Secretary for the Dep't of Corrections*, 292 F.3d 1347, 1349 (11th Cir. 2002).

Petitioner contends that although the statute of limitations was triggered on November 22, 1998, the time between November 22, 1998 and November 1, 2000 is not counted toward the limitations period because his FOIA lawsuit was pending during that time and operated to toll the limitations period.  This argument should be rejected.

In *Duncan v. Walker*, 533 U.S. 167, 121 S.Ct. 2120, 150 L.Ed.2d 251 (2001), where the Supreme Court held that an application for federal habeas corpus review does not toll the federal habeas limitations period, the Court set forth the purposes of the AEDPA provisions.  Those purposes include: (1) ensuring "that the state courts have the opportunity fully to consider federal-law challenges to a state custodial judgment before the lower federal courts may entertain a collateral attack upon that judgment," and (2) serving "the well-recognized interest in the finality of state court judgments." *Id.*, 533 U.S. at 178-79, 121 S.Ct. at 2127-28.  The Court went on to explain: "The tolling provision of § 2244(d)(2) balances the interests served by the exhaustion requirement and the limitation period," in that it allows only the filing of state, not federal, habeas corpus petitions to toll the limitations period. *Id.* at 179. Additionally, the Eleventh Circuit has explained that a 2244(d)(2) application "must attack collaterally the relevant conviction or sentence." *Sibley v. Culliver*, 377 F.3d

---

[5]If a petition for rehearing is timely filed in the state court, the 90-day period for filing a petition for certiorari in the United States Supreme Court seeking review of the decision of the state appellate court runs from the date of the state court's denial of rehearing.  *See* Sup. Ct. R. 13.3.

1196, 1200 (11th Cir. 2004) (quoting *Voravongsa v. Wall*, 349 F.3d 1, 6 (1st Cir. 2003), *cert. denied*, 541 U.S. 963, 124 S.Ct. 1724, 158 L.Ed.2d 407 (2004)).

Petitioner's suit to obtain information pursuant to the Freedom of Information Act does not qualify as an application for "State post-conviction or other collateral review with respect to the pertinent judgment or claim" under § 2244(d).  28 U.S.C. § 2244(d)(2).  The nature of petitioner's FOIA suit was to compel the United States Air Force to release information from its investigative file.  The suit did not itself request any relief from the state court judgment.  In fact, the suit was filed prior to petitioner's judgment of conviction becoming final.  Furthermore, a suit under the FOIA does not promote exhaustion by giving state courts the opportunity to consider federal-law challenges to state court judgments, and it does not promote finality of state court judgments by reducing the time in which federal review is sought. Moreover, the FOIA lawsuit was a federal, not a state filing.  *Cf. Duncan v. Walker*, 533 U.S. at 175-76, 181, 121 S.Ct. 2120 (construing the phrase "State post-conviction or other collateral review" to mean "State post-conviction [review]" and "other State collateral review;" holding that § 2244 limitations period cannot be tolled by the pendency of federal, as opposed to State, post-conviction or collateral review proceedings).  Petitioner's FOIA lawsuit did not toll the one-year habeas limitations period.  *See, e.g., Hodge v. Greiner*, 269 F.3d 104, 107 (2nd Cir. 2001) (state proceeding seeking material that might aid in challenging conviction not an "application for state postconviction or other collateral review" under § 2244(d)(2)); *Bond v. Walsh*, 2003 WL 21499852 (E.D. N.Y. Jun. 12, 2003) (New York Freedom of Information Law requests are not "applications for state post-conviction or other collateral review" under § 2244(d)(2) and cannot toll the federal habeas limitations period); *Sorce v. Artuz*, 73 F.Supp.2d 292, 297-98 (E.D. N.Y. 1999) (same).  *Cf. Bridges v. Johnson*, 284 F.3d 1201, (11th Cir. 2002) (pendency of application before state sentence review panel did not toll limitations period for filing federal habeas petition; panel's sole task was to determine whether sentence was excessively harsh in comparison to other sentences for similar crimes and criminal histories, and sentence review process did not promote exhaustion by giving state courts the

opportunity to consider federal-law challenges to state court judgments, and it did not promote finality of state court judgments by reducing the time in which federal review is sought); *Young v. Head*, 89 F.Supp.2d 1370, 1370 (N.D. Ga. 2000) (application for sentence review made pursuant to Georgia statute did not toll the § 2244(d) statute of limitations since an application for sentence review "is not a mechanism for 'collateral review with respect to the pertinent judgment.'"), *aff'd*, 247 F.3d 247 (11th Cir. 2001) (Table); *Day v. Chatman*, 130 Fed.Appx. 349, 351 (11th Cir. 2005) (Table, text in WestLaw) (state inmate's motions for return of property did not toll limitations period "because the motions were not 'applications for State post-conviction or other collateral review with respect to the pertinent judgment [of Day's conviction]' as required by 28 U.S.C. § 2244(d)(2).").

There is no dispute that at the time petitioner's conviction became final, his Rule 3.800(a) motion for jail credit was pending which tolled the statute of limitations.  (Doc. 9, p. 6).  Thus, although the limitations period was triggered on November 22, 1998, the time between November 22, 1998 and March 31, 1999 (the date the First DCA issued the mandate on petitioner's appeal of the order denying Rule 3.800 relief) is not counted toward the limitations period.[6]  Calculating the time from March 31, 1999, sixty-two days elapsed before petitioner filed his state petition for writ of habeas corpus on June 1, 1999.  The state habeas petition was pending from June 1, 1999 (the date it was filed) until August 12, 1999 (the date the First DCA denied rehearing).  Respondent argues that petitioner's attempt to seek review of the First DCA's decision in the Florida Supreme Court did not toll the limitations period under 28 U.S.C. § 2244(d)(2).  The undersigned agrees.

The AEDPA's statue of limitations is tolled for the time "during which a properly filed application for State post-conviction or other collateral review . . . is pending."  28 U.S.C. § 2244(d)(2). Petitioner filed his Petition to Invoke All Writs Jurisdiction in the Florida Supreme Court, seeking to obtain review of the First

---

[6]*See Nyland v. Moore*, 216 F.3d 1264 (11th Cir. 2000) (recognizing that a "properly filed" state post-conviction petition is "pending" under Florida procedure -- and consequently tolls the limitations period -- until the appellate court's issuance of the mandate on appeal).

DCA's per curiam denial of his state habeas petition by invoking the state supreme court's original jurisdiction under article V, section 3(b)(7) of the Florida Constitution and Rule 9.030(a)(3) of the Florida Rules of Appellate Procedure.  (Doc. 10, ex. G).  The Florida Supreme Court dismissed the "all writs" petition for lack of jurisdiction, citing *St. Paul Title Ins. Corp. v. Davis*, 392 So.2d 1304 (Fla. 1980).  (Ex. H).  In *St. Paul Title Ins.*, the petitioner filed a petition under the "all writs necessary" provision of article V, section 3(b)(7), Florida Constitution (1980), seeking review of a district court decision affirming per curiam without opinion a trial court's decision.  The Florida Supreme Court dismissed the case, explaining: "The all writs provision of section 3(b)(7) does not confer added appellate jurisdiction on this Court, and this Court's all writs power cannot be used as an independent basis of jurisdiction as petitioner is hereby seeking to use it."  *Id.*, at 1305.  *See also Grate v. State*, 750 So.2d 625, 626 (Fla. 1999) ("[r]egardless of how a petition seeking review of a district court decision is styled, this Court does not have jurisdiction to review per curiam decisions rendered without opinion and this Court's holding in *Jenkins v. State*, 385 So.2d 1356 (Fla. 1980) cannot be circumvented simply by seeking relief by filing an extraordinary writ petition.").  It is clear from the foregoing that petitioner's "all writs" petition was not a "properly filed State application for postconviction or other collateral review" in its own right.  Nor did the petition extend the tolling of the federal limitations period in any other way.[7]   Based on the foregoing, the undersigned concludes that the Petition to Invoke All Writs Jurisdiction had no tolling effect on  the § 2244 limitations period.  *See, e.g., Reed v. Crosby*, No. 8:04cv273, 2005 WL 1862715 at *1 (M.D. Fla. Aug. 4, 2005) (federal habeas limitations period not tolled during time in which petitioner "improperly sought review in the Florida Supreme Court" of state district court's per curiam denial of his state habeas

---

[7]The underlying state habeas petition cannot be deemed to have remained "pending" during the time in which petitioner improperly sought  review of the First DCA's per curiam denial by attempting to invoke the original jurisdiction of the Florida Supreme Court, because such relief was not available.  *See Wade v. Battle*, 379 F.3d 1254, 1262 (11th Cir. 2004) (a state application for post-conviction relief is "pending," for purpose of determining time that one-year habeas limitations period is tolled, only as long as the ordinary state collateral review process is in continuance).

petition); *Bismark v. Crosby*, 2005 WL 1051435 at *5, *6 (M.D. Fla. Mar. 31, 2005) (petitioner's unsuccessful attempt to invoke discretionary jurisdiction of Florida Supreme Court to review appellate court's per curiam decision affirming denial of postconviction relief had no tolling effect on the federal limitations period because such relief is not available under Florida law).

Similarly, the pendency of petitioner's petition for writ of certiorari filed in the United States Supreme Court on March 17, 2000 did not toll the limitations period. *Lawrence v. Florida*, 421 F.3d 1221, 1225 (11th Cir. Aug. 26, 2005) (binding circuit precedent clearly provides that the statute of limitations is not tolled during the pendency of a petition for writ of certiorari in the United States Supreme Court challenging the state court's denial of state collateral review); *Steed v. Head*, 219 F.3d 1298, 1300 (11th Cir. 2000) (statute of limitations' tolling provision in § 2244(d)(2) does not include the time for seeking certiorari review by the United States Supreme Court following the denial of state habeas relief); *Coates v. Byrd*, 211 F.3d 1225, 1227 (11th Cir. 2000) ("[T]he time during which a petition for writ of certiorari is pending, or could have been filed, following the denial of collateral relief in the state courts, is not to be subtracted from the running of time for 28 U.S.C. § 2244(d)(1) statute of limitations purposes." ); *see also Duncan v. Walker*, *supra*.

Accordingly, calculating the time from August 12, 1999 (the date the First DCA denied rehearing on petitioner's state habeas petition), 256 days elapsed until petitioner filed his Rule 3.800 motion to correct illegal sentence on April 24, 2000.[8] At that time, petitioner had forty-seven days remaining on his one-year limitations period.  The trial court denied the motion on June 1, 2000.  Because petitioner did not appeal, the Rule 3.800 motion is deemed "pending" until July 3, 2000 (the date the 30-day period for filing a notice of appeal expired).[9]  *See Jones v. Nagle*, 349 F.3d 1305, 1308 (11th Cir. 2003) (because petitioner could have filed a notice of appeal from the dismissal of his second State postconviction petition, one-year time limit

---

[8]Respondent concedes that this motion tolled the limitations period. (Doc. 9, p. 8).

[9]July 1, 2000 was a Saturday.

for seeking federal habeas review should have been tolled during the time petitioner could have filed timely notice of appeal).

Calculating the time from July 3, 2000, twenty-four days elapsed until petitioner filed a motion for postconviction relief pursuant to Fla.R.Crim.P. 3.850. That motion was pending from July 27, 2000 (the date it was filed) until October 7, 2003 (the date the First DCA issued the mandate on petitioner's appeal of the order denying postconviction relief).[10]  By this time, petitioner had allowed 342 days of his one-year limitations period to elapse.  He had twenty-three days, or until October 30, 2003, to file his federal habeas petition.

Petitioner contends that his three Motions To Be Heard On Pending Amended Motion To Inspect And Test Physical Evidence filed on September 23, 2003, and his petition for writ of mandamus filed on August 26, 2004, tolled the limitations period until December 1, 2004.  The undersigned disagrees.  Petitioner's motion and mandamus petition did not seek "review" of the judgment pursuant to which petitioner is incarcerated.  In Florida, the scope and purpose of mandamus are consistent with its generally understood use.  Under Florida law: "Mandamus is a narrow, extraordinary writ used to coerce an official to perform a clear legal duty." *Sica v. Singletary*, 714 So.2d 1111, 1112 (Fla. 2nd Dist. Ct. App. 1998).  Its purpose is to "compel[ ] recalcitrant officials to perform clear legal duties."  *City of Winter Garden v. Norflor Const. Corp.*, 396 So. 2d 865, 867 (Fla. 5th Dist. Ct. App. 1981). Petitioner's "motions to be heard" and mandamus application sought to compel the trial court to perform its duty.  They did not challenge petitioner's judgment of conviction, nor did they request any relief from petitioner's criminal conviction or sentence.  Moreover, in adjudicating the motions and mandamus application, the circumstances surrounding petitioner's criminal judgment were not relevant.  The propriety of petitioner's criminal conviction had nothing to do with whether the trial court should have been directed to rule.  The "motions to be heard" and mandamus application were not "properly filed application[s] for State post-conviction or other

---

[10]Petitioner concedes that his subsequent petition for writ of certiorari filed in the United States Supreme Court did not toll the limitations period.  (Doc. 14, p. 10).

collateral review with respect to the pertinent judgment." Accordingly, they did not toll the limitations period. *See Moore v. Cain*, 298 F.3d 361, 366-67 (5th Cir. 2002) (state prisoner's application to Louisiana Supreme Court for writ of mandamus, which requested that trial court be directed to rule on prisoner's state habeas petition, was not an "application for collateral review" with respect to prisoner's conviction, and therefore, mandamus application did not toll federal habeas statute of limitations).

As previously stated, petitioner had until October 30, 2003 to file his federal habeas petition. His petition was not filed until January 14, 2005, and is therefore untimely.[11]

It is noted that "[s]ection 2244 . . . permits equitable tolling 'when a movant untimely files because of extraordinary circumstances that are both beyond his control and unavoidable even with diligence.'" *Steed v. Head*, 219 F.3d 1298, 1300 (11th Cir. 2000) (citing *Sandvik v. United States*, 177 F.3d 1269, 1271 (11th Cir. 1999)). In the instant case petitioner fails to allege facts to suggest that he ever attempted to file his federal habeas corpus petition within the limitations period, much less that he <u>diligently</u> pursued relief. As previously discussed, petitioner has failed to establish that the unavailability of the United States Air Force's investigative file prevented him from raising the claims of trial court error and ineffective assistance which are raised here.

Lastly, petitioner asserts that this court should consider his petition because he is actually innocent. Assuming, without deciding, that an "actual innocence" exception to the limitations period exists, the undersigned finds that petitioner has not stated a colorable claim of actual innocence. To make a showing of actual innocence the petitioner must demonstrate that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Schlup v. Delo*, 513 U.S. 298, 327, 115 S.Ct. 85, 130 L.Ed.2d 808 (1995); *Sibley v. Culliver*, 377 F.3d

---

[11]During the pendency of petitioner's first Rule 3.850 motion, petitioner filed other applications seeking various forms of relief in state court. Since these applications ceased to be pending prior to October 7, 2003, they are not discussed.

at 1205.  "To establish the requisite probability, the petitioner must show that it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence." *Schlup*, 513 U.S. at 327.  To accomplish this, a petitioner must "support his allegations of constitutional error with new reliable evidence -- whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence -- that was not presented at trial." *Id.* at 324.

The sum total of this petitioner's claim of actual innocence is as follows:

Petitioner has claimed that he is actually innocent of this murder and testified to the fact and continues to try to prove it.  All of his filings have continuously reminded the courts of this.

Petitioner's filings regarding both State's Exhibit Y and Petitioner's Exhibit 2 relate to further testing of the State's evidence which will prove that he is innocent and was not present when the murder occurred. . . .

At the time of this instant filing, petitioner's co-defendant (Monique M. Turenne, victim's wife) is presently scheduled for trial for first-degree murder on June 13, 2005.  All this coming after a lengthy extradiction [sic] process from Canada.

(Doc. 14, p. 15; doc. 1, Mem. at 4).[12]  These assertions fall far short of the showing required by *Schlup*.

Petitioner's trial testimony was presented to the jury; therefore, it does not constitute "new" evidence of his innocence.  Petitioner's assertions that he has continued to try to prove his innocence by requesting further testing of the State's evidence does not meet the *Schlup* standard, where petitioner effectively concedes that, at present, he does not have any new evidence which exonerates him.  *See, e.g., Sykes v. Dretke*, 2004 WL 1856826 at *5 (N.D. Tex. 2004) (unpublished decision) (petitioner failed to meet *Schlup* standard where he alleged he would be able to prove his innocence with DNA testing, but conceded that at present he did not have

---

[12]The court clarifies petitioner's references to "State's Exhibit Y" and "Petitioner's Exhibit 2." "State's Exhibit Y" refers to Doc. 10, ex. Y which contains petitioner's motions for additional testing of evidence and the record of his Rule 3.853 proceeding.  "Petitioner's Exhibit 2," attached to petitioner's traverse (doc. 14), is a copy of the petition for writ of mandamus petitioner filed in the First DCA on August 26, 2004.

new evidence which exonerated him), *Report and Recommendation adopted*, 2004 WL 2026783 (N.D. Tex. Sept. 9, 2004) (unpublished decision); *Collier v. Dretke*, 2004 WL 1585903 at *3 (N.D. Tex. July 13, 2004) (unpublished decision) (petitioner failed to meet *Schlu*p standard where he merely requested the district court to order DNA testing and alleged that "advances in technology may yield potential for exculpation where none previously existed."), *Report and Recommendation adopted*, 2004 WL 1944030 (N.D. Tex. Aug. 31, 2004) (unpublished decision).

      Furthermore, by referring to his state court filings--motions for additional testing of shoe and blood evidence which his trial counsel failed to pursue--petitioner is essentially presenting two of his ineffective assistance of counsel claims to obtain review of his untimely petition.  While the court recognizes the consequences of its untimeliness determination--that petitioner's claims will not be reviewed on the merits--the court is constrained by the mandate in *Schlup*. Petitioner has not shown that this case is the "truly extraordinary" one where "a constitutional violation has probably resulted in the conviction of one who is actually innocent."  *Schlup*, at 327.  Rather, all petitioner can allege--like so many other habeas petitioners before him--is that no reasonable trier of fact would have convicted him had the proper evidence not been kept out of evidence by his trial counsel's errors.  This lone assertion--totally dependent on the probability that test results would show what petitioner's says they would--is simply not enough to satisfy the *Schlup* Court's "new evidence" and "actual innocence" requirements when it is weighed against all of the evidence in the record which established beyond a reasonable doubt that petitioner murdered David Turenne.

      The murder of David Turenne occurred outside the Turenne residence in Panama City, Florida, during the early morning hours of February 9, 1996.  There was substantial testimonial and physical evidence linking petitioner to the crime scene and to the act of murder.  Petitioner's trial testimony placed him at the scene of the crime, even though it was petitioner's contention that he only had a physical altercation with the victim; that during the altercation the victim's wife Monique Turenne hit the victim in the head with a hammer rendering him unconscious; that

the victim was still alive when petitioner left the scene; and that Ms. Turenne later struck the victim in the head with the hammer numerous times, killing him.[13]  (Doc. 22, ex. CC, Attach. at 2489-2531).[14]

There was evidence that petitioner rented a car to make the trip from Aiken, South Carolina (where he was working at the time) to Panama City, Florida. Petitioner paid cash for his rental car, telling the agent that he needed to do so "because he wanted no record, didn't want his wife to find out he was going . . . to see a girlfriend."  (*Id.*, at 2393-94).  Petitioner told the rental car agent that the girlfriend he was going to see was in Savannah, Georgia.  (*Id.,* at 2394).  Petitioner put 990 miles on the car, within which a round trip between Aiken, South Carolina and Panama City, Florida could be made.  (*Id.*, at 2393). The victim's blood was found in petitioner's rental car.  (*Id.*, at 2510).

Forensic testing further revealed the existence of petitioner's blood on the back of the victim's shirt.  (Ex. N, p. 142).  The State elicited testimony that the pattern of that blood was that of a "droplet," or blood that had been "dropped" as if the depositor of the blood had been standing over the victim.  (Doc. 22, ex. CC, Attach. at 2382).

---

[13]The following is a brief summary of petitioner's version of events. Petitioner and the victim had a physical altercation on the night of the murder.  During the altercation, the victim ended up on top of petitioner and was hitting him.  The victim suddenly stopped, and petitioner saw out of his peripheral vision that something was being swung at the victim and the victim was attempting to fend it off.  Petitioner then heard a "conk," which was the result of Ms. Turenne hitting the victim on the top of the head with a hammer.  The blow rendered the victim unconscious.  The victim fell on top of petitioner.  Petitioner rolled him off and attempted to administer first-aid.  During that process petitioner cupped the back of the victim's head with his hand.  The victim was alive at that time, and there was no brain matter emanating from the wound.  Petitioner then decided to flee, telling Ms. Turenne to wait five minutes before calling 911.  Petitioner left the scene in a rental car.  Ms. Turenne later decided to kill the victim after reviewing her insurance documents.  She did so by delivering multiple blows to the back of the victim's head.  (Ex. N, pp. 88-91, 98-100; Doc. 22, ex. CC, Attach. at 2489-2531).

[14]In evaluating whether petitioner has made a colorable claim of actual innocence, the undersigned notes that the record before the court is limited.  Respondent did not provide a copy of the trial transcript or copies of the appellate briefs.  The state appellate court's decision on direct appeal does not provide a summary of the evidence.  However, the Rule 3.850 court attached to its order portions of the trial transcript sufficient to enable this court to conclude that petitioner fails to meet the "actual innocence" exception.  (Doc. 22, ex. CC). Petitioner provided additional information concerning the defense theory and his own testimony in his Rule 3.850 motion.  (Doc. 10, ex. N).

The State introduced inculpatory statements petitioner made to others. Panama City Police Department Detective Mark McClain testified that on February 15, 1996 while he was in Aiken, South Carolina investigating the murder, he came into contact with petitioner after petitioner had attempted suicide. During their conversation petitioner asked Detective McClain if he was from Panama City. (*Id.*, at 2443). Detective McClain answered in the affirmative. Petitioner then asked if he was one of the detectives petitioner had spoken to the previous evening. Detective McClain answered that he was not. At that point, petitioner stated to him: "Monique had nothing to do with this, she was a modern day slave and I did it just trying to set her free." (*Id.*, at 2443). Lieutenant Donald Hanson, a paramedic with the Aiken, South Carolina Public Works Department, testified that he also responded to the suicide attempt, and that petitioner told him: "I'm one of the bad guys, they are here to get me for murder and I don't want to go to jail." (*Id.*, at 2456 & 2459). Petitioner left a suicide note in the motel room (a note in his DayTimer), in which he stated: "My whole life has been to protect freedom, now mine is gone. And so is my life. Marilyn and kids, I'm sorry. Please don't hate me. I love all of you so much that it hurts. Love, Ralph." (*Id.*, at 2377, 2504-05). Petitioner admitted on cross-examination that he wrote the first two lines about his freedom and his life being gone because he knew that police were getting ready to arrest him for first degree murder. (*Id.*, at 2519 & 2522). He also admitted on cross that he thought he was dying or "going to meet his maker" when he stated to Detective McClain that Monique Turenne "had nothing to do with this." (*Id.*, at 2523).

The State presented other relevant pages of petitioner's DayTimer--the calendar for the month of February, 1996. Petitioner had written his work schedule on the calendar. For the week of February 5, 1996, petitioner noted his work hours for February 5, 6, 7, 8 and 10. On February 9, 1996, he wrote "Sick." (*Id.*, at 2374-75).

In order to establish that petitioner had attempted to set up an alibi, the State presented evidence that although petitioner admitted at trial to being at the Turenne residence in Panama City during the early morning hours of February 9, 1996, he told

employees of the motel in Aiken, South Carolina that he was sick on February 9 and had stayed in his room for approximately 24 hours. (*Id.* at 2395).

Finally, there was evidence of motive. Petitioner admitted during his trial testimony that at the time of the murder he was having an extramarital affair with the victim's wife and was in love with her. (*Id.*, at 2517-18). The State presented evidence that a divorce packet was found in petitioner's motel room, (*id.*, at 2373), and that Ms. Turenne stood to receive lump sum payments totaling close to $600,000.00 from insurance policies (private and through a military survivorship package) from her husband's death , in addition to $2,000.00 in monthly income from the military survivorship package. (*Id.*, at 2422-26, 2470-72).

Petitioner contends that in light of evidence he could obtain through additional testing of a shoe found underneath the victim, the blood recovered from petitioner's rental car, and hair found in the ski mask lying underneath the victim, it is more likely than not that no reasonable juror would have convicted him. The court disagrees. The jury found that the evidence established beyond a reasonable doubt that petitioner committed the murder despite petitioner's version of events and despite evidence that the shoe found underneath the victim may not have been petitioner's.[15] The jury found that the evidence established beyond a reasonable doubt that petitioner committed the murder even though the State presented no evidence of cerebrospinal fluid in the blood recovered from petitioner's rental car. Moreover, even if test results established the lack of cerebrospinal fluid, that would not exclude petitioner as the murderer. As for the additional DNA testing of hairs found in the ski mask, the jury found that the evidence established beyond a reasonable doubt that petitioner committed the murder even though the State's forensic hair comparison expert testified that two of the six hairs recovered from the ski mask were consistent with the <u>victim's</u> hair standard; that the remaining four gray hairs, which could not be compared because they lacked pigmentation, could

---

[15]Specifically, there was evidence that the Nike shoe found underneath the victim was a size 9, that the mate to the shoe was never recovered, and that the pair of Nike shoes seized from petitioner's motel room was a size 8. (Doc. 22, ex. CC, p. 7 ¶32 & Attach. at 2373, 2376-78, 2387).

belong to anyone with gray hair; and that the victim had gray hair.[16]   (*Id.*, at 2381; *see also* Doc. 10, ex. N, p. 133).

Thus, even if petitioner presented this court with evidence of wear pattern testing which showed different wear patterns between the shoe recovered from the crime scene and those seized from petitioner's motel room, evidence that there was no cerebrospinal fluid mixed with the blood recovered from petitioner's rental car, and evidence that the remaining four hairs recovered from the ski mask were not petitioner's, petitioner has not shown that it is more likely than not that no reasonable juror would have convicted him. *See, e.g., United States v. Walls*, 2002 WL 1008467 at *8 (N.D. Ill. May 17, 2002) (unpublished opinion) (rejecting actual innocence claim which attempted to overcome procedural default of ineffective assistance claim based on counsel's waiver of DNA testing; finding that petitioner's bare assertion that "no reasonable trier of fact would have convicted him had the proper genetic evidence and witness testimony not been kept out of evidence by [counsel's] errors" was insufficient under *Schlup* when it was weighed against all of the evidence and witness testimony in the record which circumstantially established beyond a reasonable doubt that the petitioner committed the crime).

Finally, as to the allegations concerning the trial of Ms. Turenne, although petitioner's addendum (doc. 19) and Bay County court records indicate that on

---

[16]The Rule 3.850 court denied Claim 23 of petitioner's motion (ineffective assistance based on counsel's failure to object to, or seek a continuance regarding, hair evidence found in the ski mask) and Claim 25 of petitioner's motion (ineffective assistance based on counsel's failure to "properly and effectively cross-examine" the Forensic Technician concerning the identification of the hairs found in the ski mask), finding as follows: "[T]he Defendant's claim is without merit.  The [trial] transcript shows that defense counsel was prepared for the state's expert and elicited testimony that the hairs found in the ski mask could have been left by someone other than the Defendant including but not limited to the victim."  (Doc. 22, ex. CC, Attach. at 5-6 ¶¶23 & 25).

The Rule 3.850 court denied Claim 24 of petitioner's motion (ineffective assistance based on counsel's failure to object to "improper" closing argument concerning the hair evidence), finding that the closing comments were "a fair comment on the evidence and thus there was no justification for defense counsel to object."  (*Id.*, ¶24).

August 2, 2005 Ms. Turenne was convicted upon jury verdict of second-degree murder,[17] petitioner fails to demonstrate how this conviction exonerates him.

## CONCLUSION

The instant petition for writ of habeas corpus is untimely. The record does not support application of the equitable tolling doctrine or any other exception to the limitations period. Based on the foregoing, the petition should be dismissed.

Accordingly, it is respectfully RECOMMENDED:

That the petition for writ of habeas corpus (doc. 1) challenging the conviction and sentence in *State of Florida v. Ralph Edward Crompton*, in the Circuit Court of Bay County, Florida, case no. 96-521, be DISMISSED with prejudice and the clerk be directed to close the file.

At Pensacola, Florida this 31st day of October, 2005.

/s/ *Miles Davis*

**MILES DAVIS**
**UNITED STATES MAGISTRATE JUDGE**

## NOTICE TO THE PARTIES

Any objections to these proposed findings and recommendations must be filed within ten days after being served a copy hereof. A copy of any objections shall be served upon all other parties. Failure to object may limit the scope of appellate review of factual findings. *See* 28 U.S.C. § 636; *United States v. Roberts*, 858 F.2d 698, 701 (11th Cir. 1988).

---

[17]*See* www.clerk.co.bay.fl.us.
Case No: 5:05cv10/SPM/MD